UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARELL MARTIN WEATHERS,<br>Plaintiff,<br>v.<br>DAVID MCDONALD, et al.,<br>Defendants. | No. 2:23-cv-00133 SCR<br><br>ORDER AND<br>FINDINGS & RECOMMENDATIONS |

Plaintiff is incarcerated in county jail and proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983. Defendants McDonald and Bowman filed a motion for summary judgment on all claims. ECF No. 20. For the reasons set forth below, the undersigned recommends the motion be GRANTED in part and DENIED in part as follows:

1) GRANTED in favor of defendants as to plaintiff's Fourth Amendment warrantless vehicle search and vehicle seizure/impoundment claims; and

2) DENIED as to plaintiff's Fourth Amendment initial vehicle stop claims.

**PROCEDURAL BACKGROUND**

This action is proceeding on plaintiff's operative second amended complaint ("SAC"), filed May 6, 2024. ECF No. 11. The SAC alleges Fourth Amendment claims for unreasonable traffic stop, vehicle search, and vehicle seizure against defendants McDonald and Bowman, both officers with the Sacramento Police Department Gang Unit, arising out of traffic stops on January

26, 2021, and March 29, 2021, respectively.

Plaintiff alleges that on January 26, 2021, defendants McDonald and Bowman initiated a nighttime traffic stop for illegally tinted windows, despite there being no tint on the front windows or windshield of his car. ECF No. 11 at 3. Defendants searched the vehicle, seized numerous personal items, including $1,500 in $100 bills, a backpack with plaintiff's diabetic supplies, and a backpack with medicinal cannabis, and ordered plaintiff's vehicle towed. Id. at 3-4. He further alleges that on March 29, 2021, defendants McDonald and Bowman initiated a daytime traffic stop, again for illegally tinted windows, despite plaintiff's driver and passenger-side windows being rolled all the way down prior to the stop. ECF No. 11 at 5. Plaintiff explicitly stated that he did not consent to a search of his vehicle, but defendants nonetheless conducted one, wrote plaintiff a ticket, and ordered his vehicle towed. Id. at 5-6.

Upon screening the complaint under 28 U.S.C. § 1915A, the undersigned determined that as to each incident the SAC stated cognizable Fourth Amendment claims regarding the (1) traffic stops, (2) warrantless vehicle searches, and (3) seizures of his vehicle, and directed service on defendants Bowman and McDonald. ECF No. 13 at 2-4.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I. Parties' Filings**

**A. Defendants' Motion**

On November 14, 2025, defendants McDonald and Bowman moved for summary judgment on all of plaintiff's claims, contending: (1) the record demonstrates that both traffic stops were conducted properly and in accordance with the Fourth Amendment; and (2) in the alternative, they are entitled to qualified immunity. ECF No. 20 at 5. Defendants also lodged six videos depicting body-worn and in-camera footage of the traffic stops. ECF No. 20-6.

As to the encounter on January 26, 2021, defendants argue they conducted a lawful traffic stop based on reasonable suspicion of illegal tinting on the front windows in violation of Cal. Veh. Code § 26708(a)(1) and operation with a suspended registration in violation of Cal. Veh. Code § 4000(a). ECF No. 20-1 at 12-13. Further, defendants assert the pat-down of plaintiff was objectively reasonable and plaintiff verbally consented to the search of his vehicle. Id. at 13-14.

Defendants argue that the daytime stop on March 29, 2021, was supported by the same reasonable suspicion as the first encounter and the subsequent pat-down was objectively reasonable given, *inter alia*, they previously retrieved a handgun from plaintiff. ECF No. 2-1 at 14. Finally, defendants argue the vehicle search conducted during the second stop was a "routine inventory" after impoundment, which is a "well-defined exception to the warrant requirement of the Fourth Amendment." Id. at 14-15 (quoting Colorado v. Bertine, 479 U.S. 367, 371 (1987)).

**B. Plaintiff's Oppositions**

Plaintiff failed to timely oppose defendants' motion. On December 17, 2025, the undersigned ordered plaintiff to file, within 21 days, a response to defendants' motion that complies with Federal Rule of Civil Procedure 56 and Local Rule 260. ECF No. 22. In response, plaintiff filed a short, unverified opposition arguing that defendants' own evidence establishes genuine issues as to whether there was reasonable suspicion for the stop and probable cause for the subsequent searches. ECF No. 23. The undersigned sua sponte granted plaintiff leave to refile his opposition and advised that unsworn factual allegations are not evidence that can be used to oppose a summary-judgment motion. ECF No. 25.

Plaintiff filed a more comprehensive, albeit still unverified, opposition on February 23, 2026, arguing that the video evidence disputes the following facts offered by the defendants:

(1) His vehicle's windows were illegally tinted;

(2) Defendants discovered plaintiff's suspended license prior to the stop;

(3) The March traffic stop was motivated by an observed traffic violation;

(4) There were objective indicators of criminal activity beyond the alleged traffic violations, namely odor of marijuana, visible contraband, furtive movements, and bona fide safety-based exigencies;

(5) Objective facts existed to form reasonable suspicion that plaintiff was armed, namely threatening gestures, observed bulges, and evasive behavior, which warranted a pat-down search; and

(6) Search of his vehicle was performed pursuant to standardized departmental procedures.

ECF No. 26. Defendants did not file an optional reply.

Plaintiff's unverified oppositions are not admissible evidence for purposes of countering

defendants' motion for summary judgment. See Soto v. Sweetman, 882 F.3d 865, 872 (9th Cir. 2018) (concluding statements in unsworn responses to defendants' motion for summary judgement were not competent evidence); Coverdell v. Dep't of Soc. & Health Servs., State of Wash., 834 F.2d 758, 762 (9th Cir. 1987) (holding that unsworn factual allegations contained in plaintiff's earlier filings "do not constitute evidence in opposition" to a summary-judgment motion). However, it is well-established that a court may not grant a summary judgment by default. Heinemann v. Satterberg, 731 F.3d 914, 917 (9th Cir. 2013); see also Adv. Comm. Note to 2010 Amendments to Fed. R. Civ. P. 56(e) ("[S]ummary judgment cannot be granted by default . . . when an attempted response fails to comply with Rule 56(c) requirements.").

Therefore, the undersigned will consider the entire record despite plaintiff's failure to fully comply with applicable rules. See Adv. Comm. Note to 2010 Amendments to Fed. R. Civ. P. 56(e)(4) ("[T]he court may seek to reassure itself by some examination of the record before granting summary judgment against a pro se litigant."). The court will also consider whether plaintiff's verified SAC can serve as an opposing affidavit:

> [B]ecause [the plaintiff] is pro se, we must consider as evidence in his opposition to summary judgment all of [his] contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [the plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct.

Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

## II. Material Facts

### A. Background

At the time of both traffic stops, defendants McDonald and Bowman were assigned to the North Sacramento Gang Enforcement Shot Spotter Team. Defs.' Summary of Undisputed Material Facts ("SUMFs") 1, ECF No. 20-2. Defendants' duties included responding to and investigating reports of shots fired, gathering intelligence on known gang members, investigating gang-related crimes, and proactively patrolling known gang locations. SUMFs 2-3. On the dates of both traffic stops, defendants were in a fully marked patrol vehicle with McDonald driving and Bowman in the front passenger seat. SUMFs 5-6, 49.

### B. First Incident (Jan. 26, 2021)

**i. Traffic Stop**

On January 26, 2021, at about 6:30 p.m., defendants were performing a gang unit patrol in South Natomas, near the intersection of Truxel Road and West El Camino Avenue. SUMF 4. Defendants observed what they believed to be a silver Lexus sedan traveling in the opposite lane with tinting on the front windows in violation of Veh. Code § 26708(a)(1). SUMF 7. Defendants conducted a records check of the license plate that showed a suspended vehicle registration effective October 8, 2020, in violation of Veh. Code § 4000(a). SUMF 8. Based on these violations, defendants conducted a traffic stop at Truxel Road and Pebblestone Way. SUMF 9.

In his sworn SAC, plaintiff disputes that the windows of his vehicle were illegally tinted. ECF No. 11 at 3. Plaintiff further states that McDonald identified only the tinted windows, and not the registration, as the basis of the stop both during the incident and at the preliminary hearing. ECF No. 11 at 3.

**ii. Search and Seizure**

McDonald approached the vehicle on the driver's side and Bowman on the passenger side. SUMF 10. Plaintiff provided his driver's license and proof of insurance. A records check confirmed he possessed a valid driver's license, that he was neither on probation nor parole, and had no outstanding warrants. SUMFs 11-12.

While at the driver's side window, McDonald smelled what he believed to be a strong odor of burnt marijuana coming from inside plaintiff's vehicle. SUMF 13. When asked about the source of the smell, plaintiff responded that he had a couple of ounces of marijuana in the vehicle. SUMF 14. Possession of over an ounce of marijuana (28.5 grams) is illegal under Cal. Health & Safety Code § 11357(b)(2). SUMF 15. Officer McDonald asked plaintiff to exit the vehicle and he complied. SUMF 16. Officer McDonald conducted a pat-down search of plaintiff that was negative for weapons or contraband, and plaintiff was instructed to sit on the curb while McDonald returned to his vehicle to conduct a records check. SUMFs 17-19.

Bowman asked where the marijuana was located and whether there was anything else illegal in the vehicle. SUMF 20, 22. Plaintiff responded it was in a blue backpack on the back seat and that there was nothing else illegal inside the car. SUMF 21-22. When asked for consent

to search the vehicle, plaintiff said he consented to a visual search of the vehicle and retrieval of the backpack from the back passenger seat. SUMF 23.

Based on his training and experience, defendant Bowman was aware that subjects in possession of large quantities of marijuana commonly sell it for profit and carry firearms. Based on the smell of burnt marijuana and plaintiff's admission that he had more than an ounce of marijuana inside the vehicle, Bowman conducted a probable cause search of the vehicle. SUMF 24-25. Starting at the driver's side door, Bowman observed a bulge under the floor mat. SUMF 26-27. Bowman lifted the mat and discovered a loaded, 9 mm semi-automatic handgun. SUMF 28, 34. Bowman ordered plaintiff handcuffed, placed in the back seat of the patrol vehicle, and advised of his Miranda rights. SUMF 29-30.

Defendants continued the search and retrieved plaintiff's backpack, which contained two medium-sized jars of dried marijuana (approximately 36 and 39 grams, respectively), seven small, sealed packages of dried marijuana buds (approximately ten grams each), thirteen empty small plastic bags, and a purple plastic tray. SUMF 38. Bowman also retrieved plaintiff's cell phone, wallet (containing $1,500 in $100 bills), a digital scale, and an ash tray with residue from smoked marijuana blunts. SUMF 39-40. As a part of the probable cause search and due to having to tow the vehicle, Bowman searched the trunk but did not find any evidence of value. SUMF 41. Plaintiff's vehicle was towed from the scene pursuant to Cal. Veh. Code § 22651(h), and plaintiff was booked into Sacramento County Jail on various charges, including for being a person previously convicted of a felony in possession of a gun under Cal. Penal Code § 29800(A)(1). SUMF 42-46.

**C. Second Incident (Mar. 29, 2021)**

**i. Traffic Stop**

On March 29, 2021, at approximately 5:54 p.m., defendants were performing a gang unit patrol in Natomas on Truxel Road. SUMF 47. Defendants observed the same Lexus with tinting on the front windows in violation of Cal. Veh. Code § 26708(a). SUMF 50. A records check again showed that plaintiff's vehicle registration was suspended in violation of Cal. Veh. Code § 4000(a). SUMF 51. Based on these two violations, defendants conducted a traffic stop of the

Lexus at Truxel Road and Gateway Park Boulevard. SUMF 52.

Plaintiff disputes window tinting as a viable basis of reasonable suspicion and claims his driver and passenger-side windows were rolled down. ECF No. 11 at 5. Plaintiff further asserts that after ordering plaintiff's passengers out of the car, Bowman rolled the windows up himself. Id. Plaintiff also argues that the traffic violation for expired registration was pretextual because, as defendants informed him, the stop was related to the January 26, 2021, incident. Id. at 5.

**ii. Search and Seizure of Plaintiff's Vehicle**

Defendant McDonald approached the vehicle on the driver's side and Bowman on the passenger side. SUMF 53. Plaintiff provided an identification card and not a driver's license. SUMF 54. McDonald ordered plaintiff and his two passengers to exit the vehicle. SUMF 55-56; 61. Plaintiff recognized McDonald, and McDonald recalled Bowman retrieving a loaded firearm possessed by plaintiff in the January incident. SUMF 57. Based on his training and experience and the previous encounter, McDonald believed that plaintiff may have also been armed during this encounter. SUMF 58. McDonald conducted a pat-down search of plaintiff that was negative for weapons or contraband. SUMF 59.

Plaintiff was instructed to sit on the curb while the investigation continued and was informed that the vehicle would need to be towed because of the registration issue. SUMF 60, 62. After defendant Bowman inventoried the vehicle's contents, defendant McDonald obtained plaintiff's signature on the citation for the suspended registration violation. SUMF 64. Plaintiff disputes that Bowman merely inventoried plaintiff's vehicle and contends that a "complete search" was performed. ECF No. 11 at 6.

**SUMMARY JUDGMENT LEGAL STANDARD**

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual

dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Adv. Comm. Note to 1963 Amendments to Fed. R. Civ. P. 56(e)).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. ... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## DISCUSSION

### 1. Traffic Stops

#### A. Legal Standard

The Fourth Amendment protects an individual's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" Graham v. Connor, 490 U.S. 386, 395 n.10 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968)). This may occur through coercion, physical force, or a show of authority. See United States v. Chan-Jimenez, 125 F.3d 1324, 1326 (9th Cir. 1997). A person's liberty is restrained when "taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Florida v. Bostick, 501 U.S. 429, 437 (1991); see also Dees v. County of San Diego,

960 F.3d 1145, 1154 (9th Cir. 2020) (holding that a seizure occurs if, in view of all circumstances surrounding incident, a reasonable person would have believed she was not free to leave).

An investigatory stop of a vehicle is justified under the Fourth Amendment if the officer reasonably suspects that a traffic violation has occurred. Melendres v. Arpaio, 695 F.3d 990, 1000 (9th Cir. 2012). "Reasonable suspicion" is defined as "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Valdes-Vega, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc). While the reasonable suspicion standard "is not a particularly high threshold to reach," United States v. Bontemps, 977 F.3d 909, 915 (9th Cir. 2020), it must be more than a "mere hunch." Kansas v. Glover, 589 U.S. 376, 380 (2020); see also Illinois v. Wardlow, 528 U.S. 119, 123 (2000) ("[T]he Fourth Amendment requires at least a minimal level of objective justification for making the stop.") (citation omitted).

**B. Analysis**

Defendants assert they are entitled to summary judgment on plaintiff's traffic stop claims and advance the same two bases of reasonable suspicion for each stop: (1) illegally tinted front windows; and (2) suspended vehicle registration. ECF No. 20-1 at 15-17. For the reasons set forth below, the undersigned finds that there are triable issues of fact precluding summary judgment as to either proffered justification for the traffic stops.

**i. Window Tinting**

Defendants identify "tinting on the front windows in violation of California Vehicle Code section 26708(a)(1)" as bases for the traffic stops on January 26, 2021, and March 29, 2021. Decl. of D. McDonald, ¶¶ 5, 10, ECF No. 20-4 at 2-3 ("McDonald Decl."); Decl. of M. Bowman, ¶¶ 5, 14, ECF No. 20-5 at 2, 4 ("Bowman Decl."); see also ECF No. 20-3 at 26 (police report, Jan. 26, 2021). Under that provision, "[a] person shall not drive any motor vehicle with any object or material placed, displayed, installed, affixed, or applied upon the windshield or side or rear windows." Cal. Veh. Code § 26708(a)(1). Notwithstanding subdivision (a)(1), "clear, colorless, and transparent material may be installed, affixed, or applied to the front side windows, located to the immediate left and right of the front seat" if certain conditions are met, including, *inter alia*, "[t]he . . . material has a minimum visible light transmittance of 88 percent." Cal. Veh.

Code § 26708(d)(1).

The Ninth Circuit addressed traffic stops pursuant to this provision in United States v. Caseres, 533 F.3d 1064 (9th Cir. 2008). Caseres appealed his conviction for being a felon in possession of ammunition on grounds that the evidence was obtained during an unlawful traffic stop. A police officer had initiated the stop in question after suspecting, *inter alia*, tinted front passenger windows in violation of § 26708(a)(1). Caseres, 533 F.3d at 1067. The Ninth Circuit held that the officer's suspicion was without "objective basis," as "he would have had no way of knowing that the tint was not factory-installed, legally tinted safety glass." Caseres, 533 F.3d at 1069, n.2. "We disagree … that seeing someone lawfully driving with tinted glass raises a reasonable suspicion of illegality such that a reasonable inquiry is justified. Without additional articulable facts suggesting that the tinted glass is illegal, the detention rests upon the type of speculation which may not properly support an investigative stop." Id. at 1069 (quoting People v. Butler, 248 Cal. Rptr. 887, 890 (Cal. Ct. App. 1988)).

Applying Caseres, district courts have recognized that "[d]ue to such statutory nuances," i.e., the exceptions in § 26708(d), "an officer cannot 'justify a traffic stop' with the bare-bones conclusion that a car's 'windows were tinted.'" United States v. Salas, 766 F. Supp. 3d 1069, 1073 (S.D. Cal. 2025) (quoting Caseres, 533 F.3d at 1069). Still, "[p]olice need not 'carry around and use burdensome equipment to measure light transmittance . . . [t]he record must simply demonstrate a particularized and objective basis for believing that the degree of window tinting violates the law." Id. (citations omitted); see also Gentry v. Manteca Police Dep't, No. 2:22-cv-0720 DC JDP, 2025 WL 2829423, *6 (E.D. Cal. Oct. 6, 2025) ("[T]he relevant inquiry is whether [defendants] had a particularized and objective basis for suspecting that [plaintiff's] vehicle had window tinting that violated [Cal. Veh. Code § 26708].") (citations omitted).

There is ample case law to illustrate this rule. In Salas, the court determined the government met its burden through officer testimony regarding the degree to which the window was obscured that was corroborated by photographs and body-worn-camera footage. Id. at 1074. Similarly, in United States v. Pullen, No. 1:20-CR-0195 JLT, 2022 WL 4586177, at *3–4 (E.D. Cal. Sept. 29, 2022), aff'd, No. 23-10036, 2024 WL 2843036 (9th Cir. June 5, 2024), District

Judge Thurston determined the officers had reasonable suspicion where the police officers testified they "could not see clearly into the driver's window and saw, instead, a silhouette" when they viewed the vehicle sometime around 4:00 to 4:30 p.m.[1]

On the other end of the spectrum is Gentry, a challenge to a traffic stop similarly premised on an observation of "front tinted windows in violation of [Cal. Veh. Code §] 26708." 2025 WL 2829423 at *6. The officers there moved for summary judgment, arguing that the traffic stop was supported by reasonable suspicion of unlawful window tinting and plaintiff's concession at deposition that his windows were in fact tinted. Gentry, 2025 WL 2829423 at *7. District Judge Coggins denied summary judgment, holding that the defendants had not demonstrated a particularized and objective basis for suspecting plaintiff's windows violated § 26708:

> The fact that Plaintiff's vehicle had windows that were tinted is not sufficient, on its own, to establish reasonable suspicion of a violation of California Vehicle Code section 26708, because that statute does not prohibit all tinting. Rather, Defendants [] must demonstrate a particularized and objective basis for suspecting Plaintiff's vehicle had a window tinting that violates [§] 26708. As Plaintiff argues, there remains a genuine dispute of material fact regarding Defendant[s'] observations *prior to the stop*, beyond the undisputed fact that Plaintiff's windows were tinted. . . . Thus, when viewed in a light most favorable to Plaintiff as the nonmoving party, this evidence creates a genuine dispute of fact as to whether Defendants [] had reasonable suspicion to stop Plaintiff's vehicle for having illegally tinted windows in violation of California Vehicle Code section 26708.

Id. (emphasis added).

Here, defendants' bare-bones, conclusory justification of "tinting on the front windows in violation of Vehicle Code § 26708(a)(1)" is indistinguishable from the justifications proffered in Caseres and Gentry. Defendants do not offer any specific observations of the vehicle prior to

---

[1] See also United States v. Ybarra, No. 22-cr-0347 BLF VKD, 2023 WL 4188219, at *5 (N.D. Cal. May 3, 2023) (finding reasonable suspicion where officers did not merely observe "some tint on the vehicle's windows" but rather that they appeared "excessively dark," obstructing "sufficiently clear view of the interior of the vehicle"); Adom v. City of Los Angeles, No. 5:21-cv-0711 JFW KES, 2023 WL 3958913, at *7 (C.D. Cal. May 17, 2023) (finding reasonable suspicion where officers explained "[t]he tint [on plaintiff's windows] was so dark, [they] could not see inside the vehicle, consistent with an illegal level of tint based on [their] experience"), report and recommendation adopted, No. 5:21-cv-0711 JFW KES, 2023 WL 3958883 (C.D. Cal. June 12, 2023), aff'd, No. 23-55558, 2025 WL 88846 (9th Cir. Jan. 14, 2025).

either stop that would support an inference that "the *degree* of window tinting was unlawful." Salas, 766 F. Supp. 3d at 1074 (emphasis in original). With no evidence of a "particularized and objective basis" for the stop, defendants have not met their initial burden.

Even if they had met their burden, the undisputed nighttime conditions at the time of the stop on January 26, 2021, raise factual questions as to defendants' ability to even make the relevant observation. See Gentry, 2025 WL 2829423 at *7 (finding genuine issue as to "whether [defendants] could have observed the tint on [his] window because the traffic stop occurred at night, several hours after sunset"); see also Pullen, 2022 WL 4586177, at *4 (noting "it is within the common experience that lighting can impact how dark window tinting appears"). As for the daytime stop on March 29, 2021, plaintiff's sworn statement that his front windows were rolled all the way down creates a genuine issue of fact as to defendants' purported observations of unlawful tinting. Gentry, 2025 WL 2829423, at *7 (plaintiff's testimony that his windows were down "calls into question whether Defendant [] could have observed the tint on Plaintiff's windows"). Accordingly, to the extent defendants assert unlawful window tinting supplied the bases for reasonable suspicion for both traffic stops, they are not entitled to summary judgment.

**ii. Expired Vehicle Registration**

Defendants also argue that both traffic stops were justified because a license plate check revealed a "suspended vehicle registration in violation of [Cal. Veh. Code §] 4000(a)." Bowman Decl. ¶¶ 5, 14; McDonald Decl. ¶¶ 5,10; see also ECF No. 20-3 at 26 (police report, Jan. 26, 2021). Under that provision, "[a] person shall not drive . . . any motor vehicle . . . unless it is registered and the appropriate fees have been paid under this code[.]" Cal. Veh. Code § 4000(a).

**1. January 26, 2021**

Beginning with the first traffic stop January 26, 2021, Defendant Bowman states that as defendants "followed behind" plaintiff's vehicle, he "conducted a records check of the license plate [] that showed a suspended vehicle registration in violation of California Vehicle Code section 4000(a)." ECF No. 20-3 at 26; Bowman Decl. ¶¶ 5-6. Defendants then made an enforcement stop for this violation. Id. The lack of valid vehicle registration justifies a traffic stop under the Fourth Amendment. Glover, 589 U.S. at 381; Delaware v. Prouse, 440 U.S. 648,

663 (1979). Accordingly, defendants' evidence is sufficient to meet their initial burden.

Citing defendants' video evidence, plaintiff disputes that defendants discovered this infraction prior to the traffic stop. ECF No. 26 at 4-5. Plaintiff's assertion is unverified, but the undersigned will look to the video footage given his pro se status. "[F]or purposes of ruling on a motion for summary judgment, a district court may properly view the facts in the light depicted by bodycam footage and its accompanying audio, to the extent the footage and audio *blatantly* contradict testimonial evidence." Hughes v. Rodriguez, 31 F.4th 1211, 1218 (9th Cir. 2022) (emphasis in original).

The undersigned agrees that the video footage sufficiently contradicts defendants' testimony that they learned of plaintiff's expired registration *before* conducting the traffic stop. With traffic stops, "[t]he officer's action must be 'justified at its inception.'" Glover, 589 U.S. at 386 (quoting Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty., 542 U.S. 177, 185 (2004)). Here, both Bowman's body-worn-camera footage and the in-car-camera footage show Bowman asked dispatch for a license plate check after plaintiff had pulled over and while McDonald was at plaintiff's driver-side window. ECF No. 20-1, Exh. C at 1:10-15 (Bowman), and Exh. D at 1:09-1:16 (in-car camera). The in-car-camera footage shows dispatch responded to the license plate inquiry after defendant Bowman had exited the cruiser and approached plaintiff's passenger-side window. ECF No. 20-1, Exh. D at 01:27-01:40.

Defendants do not cite any specific portion of the video or other record evidence that pinpoints when the license plate check occurred. Instead, they cite broadly to the first 90 seconds of the in-car-camera footage—an excerpt that includes Bowman's license plate check *after* the stop, as well as dispatch's subsequent response. See SUMF 8. Thus, without additional context, the undersigned finds the video evidence, which shows Bowman requested a license plate check *after* the traffic stop occurred, to be a blatant contradiction of defendants' testimony. Accordingly, because there is a factual dispute as to whether petitioner's registration infraction supplied reasonable suspicion for the January 2021 traffic stop, defendants are not entitled to summary judgment.

////

**2. March 29, 2021**

On the second traffic stop, there are also factual disputes as to whether plaintiff was stopped before defendants learned of his expired registration that preclude summary judgment. The in-car camera footage from March 29, 2021, shows defendants activated their flashing lights (00:30) and asked dispatch to run a license plate check a few seconds later (0:36). ECF No. 20-1, Ex. G. Plaintiff appears to immediately yield to the flashing lights by merging to the right-most lane (three lanes over) in preparation to turn right. Id. at 0:35-0:56. Dispatch then confirms plaintiff's expired registration about 30 seconds after defendants activated their lights and while plaintiff is still in the right-most lane preparing to turn. Id. at 0:57-01:04. After the light turns green, plaintiff turns right, enters a parking lot, and comes to a stop. Id. at 1:04-1:41.

Based on this footage, the undersigned cannot say as a matter of law that defendants identified plaintiff's expired registration prior to the seizure. See Hydrick v. Hunter, 500 F.3d 978, 993 (9th Cir. 2007) ("The 'reasonableness' of a search or seizures is a fact-intensive inquiry that cannot be determined at this stage[.]"), cert. granted, judgment vacated on other grounds, 556 U.S. 1256 (2009). Defendants' activation of sirens, and plaintiff's apparent yield to that show authority, occurred mere seconds before dispatch's confirmation of his unexpired registration. It should be up to a jury to parse the totality of the factual circumstances to determine when the seizure occurred. See Michigan v. Chesternut, 486 U.S. 567, 575 (1988) (citing activation of "siren or flashers" as conduct that "communicated to the reasonable person an attempt to capture or otherwise intrude upon respondent's freedom of movement"); California v. Hodari D., 499 U.S. 621, 628 (1991) (pursuit of suspect with flashing police vehicle lights was "surely an adequate show of authority"). Accordingly, defendants are not entitled to summary judgment on plaintiff's Fourth Amendment challenge to the March 2021 traffic stop.

**C. Qualified Immunity**

Because there are genuine issues of material fact precluding summary judgment on plaintiff's challenge to the traffic stops, the undersigned will consider whether defendants are entitled to qualified immunity. In resolving qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, viewed in the light most

favorable to the plaintiff, demonstrate the officials violated a constitutional right. The second asks whether that right was "clearly established" at the time of the alleged constitutional violation. Peck v. Montoya, 51 F.4th 877, 887 (9th Cir. 2022) (citations omitted).

Regarding prong one, the undersigned has found genuine issues of fact that preclude summary judgment on plaintiff's Fourth Amendment traffic stop claims. As for prong two, defendants briefly assert that they "believed reasonably in their conduct and they did not violate clearly established law," but do not put forth any further argument or identify the rights at issue. See ECF No. 20-1 at 5. Defendants have not, and cannot, assert that the Fourth Amendment right at issue is not clearly established. "It has been settled law since the 1970's that in order for a police officer to initiate an investigatory stop of a motorist, there must at least exist reasonable suspicion that the motorist is engaging in illegal activity." Liberal v. Estrada, 632 F.3d 1064, 1077 (9th Cir. 2011), abrogated on other grounds by Hampton v. California, 83 F.4th 754 (9th Cir. 2023). Accordingly, defendants are not entitled to qualified immunity on plaintiff's Fourth Amendment traffic stop claims.

**2. Vehicle Searches**

**A. Legal Standard**

Warrantless searches are presumptively unreasonable. See U.S. Const. amend. IV; see also Mincey v. Arizona, 437 U.S. 385, 390 (1978) ("The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate [judge], are *per se* unreasonable[.]'") (quoting Katz v. U.S., 389 U.S. 347, 357 (1967)). However, the government may rebut this presumption by demonstrating that the warrantless search falls within one of the few recognized Fourth Amendment exceptions. Missouri v. McNeely, 569 U.S. 141, 148 (2013).

This claim implicates several of the warrant-requirement exceptions. Under the "automobile exception," police may search a car without a warrant "if there is probable cause to believe that [it] contains evidence of a crime." United States v. Faagai, 869 F.3d 1145, 1150 (9th Cir. 2017). Voluntary consent is another "well-established exception to the Fourth Amendment's prohibition of warrantless searches." U.S. v. Enslin, 327 F.3d 788, 793 (9th Cir. 2003). "A

search incident to a lawful arrest is an exception to the general rule that warrantless searches violate the Fourth Amendment." Arizona v. Gant, 556 U.S. 332, 338 (2009). Finally, the "plain view" doctrine permits the warrantless seizure of incriminating evidence where (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed; (2) the item is in plain view; and (3) the item's incriminating character is "immediately apparent." Horton v. California, 496 U.S. 128, 136 (1990).

**B. Analysis**

**i. January 26, 2021**

The allegedly unlawful vehicle search conducted on January 26, 2021, had two components. First, Bowman searched the vehicle and discovered a handgun under the driver-side floor mat. Bowman Decl. ¶ 9; ECF No. 20-3 at 27 (police report). Second, after defendant Bowman directed other officers to arrest plaintiff, he searched the rest of the vehicle and retrieved plaintiff's backpack and other personal items. Id. at 11.

Defendants offer several justifications for the searches. They identify the initial search that produced the handgun as a "probable cause" search based on the "strong smell" of burnt marijuana and plaintiff's admission that he had a "couple ounces" of marijuana in the vehicle. McDonald Decl. ¶¶ 7-8; Bowman Decl. ¶ 8. Defendants also claim Bowman retrieved the gun pursuant to a consent search and "arguably" the plain view exception to warrantless searches. ECF No. 20-1 at 14. Defendants identify the second component as a "search incident to arrest of the vehicle to discover any additional evidence of cannabis-related sale." Id.

Defendants' testimony regarding the smell of marijuana and plaintiff's admission of possessing a couple ounces of marijuana is sufficient to establish probable cause for the initial search that resulted in retrieval of plaintiff's gun. See United States v. Moore, No. 1:23-cr-0077 ADA BAM, 2023 WL 8261306, at *5 (E.D. Cal. Nov. 29, 2023) (finding officer had probable cause to search car where "he had diligently investigated to confirm or dispel his suspicions that Moore possessed more than the allowable amount of marijuana and was engaged in sales of the drug"). Defendants have also established that the second part of the search occurred after defendant Bowman located the gun and ordered plaintiff arrested. Bowman Dec. ¶ 9. Therefore,

defendants have met their initial burden in justifying the warrantless search of plaintiff's vehicle.

The burden then shifts to plaintiff. Plaintiff's assertions of "no independent criminal indicators" to justify the search, ECF No. 26 at 5, are conclusory, unverified, and insufficient to rebut defendants' initial burden. For instance, he argues defendants did not claim any odor of marijuana, id., but does not dispute that the odor was present.

Plaintiff also argues that all of the vehicle and inventory searches in this case are the "fruit of the poisonous tree" because the initial stops were unlawful. Id. at 6. However, Ninth Circuit has held that the exclusionary rule and "fruit-of-the-poisonous tree" doctrine do not apply in § 1983 cases. Lingo v. City of Salem, 832 F.3d 953, 959 (9th Cir. 2016) (rejecting the argument that "probable cause to arrest may be supported only by information that was obtained in accordance with the Fourth Amendment"); see also Fortson v. Los Angeles City Attorney's Off., 852 F.3d 1190, 1194 (9th Cir. 2017) ("Although the search that uncovered his guns may have been unlawful, evidence recovered can nevertheless create probable cause sufficient to defeat subsequent [§ 1983] claims of malicious prosecution and unlawful arrest/imprisonment.") (citing Lingo, 832 F.3d at 959-60). Therefore, the triable issues as to the legality of the initial stop discussed above do not preclude summary judgment on the subsequent search.

Accordingly, because plaintiff has failed to raise a triable issue as to defendants' probable cause to search the vehicle, defendants are entitled to summary judgment on plaintiff's Fourth Amendment challenge to the January 2021 vehicle search.

**ii. March 29, 2021**

Plaintiff also challenged the inventory search of his vehicle on March 29, 2021. Because a "lawfully impounded vehicle may be searched for the purpose of determining its condition and contents at the time of impounding, Caseres, 533 F.3d at 1074 (citing South Dakota v. Opperman, 428 U.S. 364, 368 (1976)), the undersigned will consider the legality of the March 2021 vehicle search together with plaintiff's Fourth Amendment vehicle seizure/impoundment claims below.

**3. Vehicle Seizures/Impoundment**

Defendants identify Cal. Veh. Code § 22651(h) as the legal basis for the impoundment of plaintiff's vehicle during each of the incidents. Bowman Decl. ¶ 12, ECF No. 20-5 at 4. Under §

22651(h)(1), the police may impound a vehicle "[w]hen an officer arrests any person driving or in control of a vehicle for an alleged offense" and "takes that person into custody." Caseres, 533 F.3d at 1074 (quoting Cal. Veh. Code § 22651(h)(1)).

That an ordinance or statute authorizes impoundment in a particular circumstance "does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment." Crago v. Knacke, 2020 WL 3073771 at *3 (E.D. Cal. June 10, 2020) (quoting Miranda v. City of Cornelius, 429 F.3d 858, 864 (9th Cir. 2005)). Courts have found impoundment based on traffic infractions unconstitutional unless the community caretaking doctrine applies. See Miranda, 429 F.3d at 864; Caseres, 533 F.3d at 1074-75 ("Additionally, a vehicle can be impounded under § 22651(h)(1) only if impoundment serves some 'community caretaking function.'" (quoting People v. Williams, 52 Cal.Rptr.3d 162, 165–67 (2006))). "An impoundment may be proper under the community caretaking doctrine if the driver's violation of a vehicle regulation prevents the driver from lawfully operating the vehicle, and also if it is necessary to remove the vehicle from an exposed or public location." Miranda, 429 F.3d at 865 (citations omitted).

**A. First Impoundment (January 26, 2021)**

The first traffic stop resulted in plaintiff's arrest, making defendants' impoundment of his car proper under Cal. Veh. Code § 22651(h)(1). Defendants do not identify an accompanying community caretaking function, but courts have consistently found impoundment of an unregistered vehicle to be reasonable under the Fourth Amendment. See Leslie v. City of Sand City, 615 F.Supp.2d 1121, 1125-26 (N.D. Cal. 2009) (in case involving expired registration, stating that "if allowing a driver to remove a vehicle would result in violation of a traffic regulation, impoundment of a vehicle is reasonable" under the Fourth Amendment); Williams v. California Highway Patrol, No. 2:25-CV-787 DAD-SCR, 2026 WL 787972, at *8 (E.D. Cal. Mar. 20, 2026) (finding community caretaking doctrine justified impounding vehicle where the record "establish[ed] that the vehicle's registration had lapsed"), report and recommendation adopted, No. 2:25-CV-00787-DAD-SCR (PS), 2026 WL 1557865 (E.D. Cal. June 2, 2026). It is undisputed that plaintiff's registration was suspended at the time of the traffic stop in violation of Cal. Veh. Code § 4000(a), and video footage shows that dispatch notified defendants of that fact

prior to his arrest. Accordingly, defendants have met their initial burden.

In his verified SAC, plaintiff alleges that he offered to have someone pick up the vehicle and park it legally until he could make bail. ECF No. 11 at 4. Bowman would agree only if plaintiff cooperated, and ultimately had the car towed when plaintiff refused. Id. But even if plaintiff could quickly arrange for the vehicle to be moved, its suspended registration would prevent plaintiff or anyone else from lawfully operating the vehicle. "The violation of a traffic regulation justifies impoundment of a vehicle if the driver is unable to remove the vehicle from a public location without continuing its illegal operation." Miranda, 429 F.3d at 865; see also United States v. Cartwright, 630 F.3d 610, 616 (7th Cir. 2010) (upholding the impoundment of the defendant's vehicle, based in part on the fact that "no one could have lawfully driven [the] car from the scene"). Therefore, plaintiff's offer does not create a triable issue as to whether the vehicle's impoundment served a community care function. For this reason, defendants are entitled to summary judgment on plaintiff's challenge to the January 2021 towing of his vehicle.

**B. Second Impoundment (March 29, 2021)**

Defendants' reliance on Cal. Veh. Code § 22651(h) to justify the second impoundment is misplaced because they did not take plaintiff into custody. The record shows defendants only issued plaintiff a traffic citation and that plaintiff and his two passengers were picked up in another vehicle while his Lexus was being towed. McDonald Decl. ¶ 13; Bowman Decl. ¶ 16. Section 22651(o)(A) alternately permits peace officers to remove a vehicle "[w]ith a registration expiration date in excess of six months before the date it is found," but here plaintiff's registration was suspended October 8, 2020, less than six months prior. See ECF No. 20-3 at 26.

The absence of a statutory basis for the vehicle's removal does not end the Fourth Amendment analysis. "The question . . . is not whether the search (or seizure) was authorized by state law. The question is rather whether the search was reasonable under the Fourth Amendment." Miranda, 429 F.3d at 864 (quoting Sibron v. New York, 392 U.S. 40, 61 (1968))). Again, it is undisputed that plaintiff's registration was still suspended during the second stop, defendants had knowledge of that infraction, and conveyed to plaintiff that it was the reason for the impoundment. See Bowman Decl. ¶¶ 14, 16. Plaintiff, or anyone else, could not drive the

vehicle without continuing to violate Cal. Veh. Code § 4000(a). See Miranda, 429 F.3d at 865. The community caretaking doctrine therefore justified impounding the vehicle to remove it from a public road and entitles defendants to summary judgment on plaintiff's vehicle seizure claim stemming from the March 2021 traffic stop.

Finally, returning to the search of the vehicle during this second stop, defendants assert they conducted a routine and lawful inventory search of the vehicle. McDonald Decl. ¶ 13; Bowman Decl. ¶ 16. "Inventory searches of impounded vehicles [are] a 'well-defined exception to the warrant requirement of the Fourth Amendment.'" United States v. Anderson, 101 F.4th 586, 591 (9th Cir. 2024) (quoting Bertine, 479 U.S. at 371). "[T]he inventory-search exception applies 'where the process is aimed at securing or protecting the car and its contents.'" Anderson, 101 F.4th at 594 (quoting Opperman, 428 U.S. at 373). "[A]n inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." Id. (quoting Fla. v. Wells, 495 U.S. 1, 4 (1990)).

Plaintiff alleges that defendants conducted a full search of the vehicle after he refused consent. ECF No. 11 at 5-6. An absence of consent is not sufficient to create a triable issue as to the legality of a *warrantless* inventory search. Plaintiff does not allege that the search exceeded its inventory purpose or explain how it allegedly violated "standardized department procedures." ECF No. 26 at 6. His conclusory, verified statements are insufficient to create genuine issues of fact as to the constitutionality of the warrantless inventory search. Accordingly, defendants' motion for summary judgment should be granted as to March 2021 vehicle search and seizure.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that the Clerk of the Court shall randomly appoint a district judge to this matter.

In addition, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 20) be GRANTED IN PART and DENIED IN PART as follows:

////

////

a. Summary judgment be GRANTED in favor of defendants as to plaintiff's Fourth Amendment challenge to the vehicle searches on January 26, 2021, and March 29, 2021;

b. Summary judgment be GRANTED in favor of defendants as to plaintiff's Fourth Amendment challenge to the vehicle seizure/impoundments on January 26, 2021, and March 29, 2021; and

c. Summary judgment be DENIED as to plaintiff's Fourth Amendment challenge to the initial vehicle stops on January 26, 2021, and March 29, 2021.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 24, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE